```
 1  LAWRENCE G. BROWN
    Acting United States Attorney
 2  DAVID L. GAPPA
    Assistant U.S. Attorney
 3  2500 Tulare Street
    Suite 4401
 4  Fresno, California  93721
    Telephone:  (559) 497-4020
 5
 6
 7
 8
 9
10          IN THE UNITED STATES DISTRICT COURT FOR THE
11                 EASTERN DISTRICT OF CALIFORNIA
12
13  UNITED STATES OF AMERICA,   )  CR. F. 08-00384 OWW
                                )
14            Plaintiff,        )  GOVERNMENT'S CONSOLIDATED
                                )  OPPOSITION TO MOTIONS TO SEVER
15       v.                     )
                                )  Date:   May 18, 2009
16  RAYMOND MOTT                )  Time:   1:30 p.m.
    EARL EDWARD RIEDEL          )  Place:  Courtroom Three
17  STEVEN ALAN LOBUE,          )  Hon:    Oliver W. Wanger
                                )
18            Defendants.       )
    _____)
19
```

20      The United States of America, by and through its attorneys,
21 LAWRENCE G. BROWN, Acting United States Attorney, and DAVID L.
22 GAPPA, Assistant United States Attorney, hereby opposes defendant
23 RAYMOND MOTT, EARL EDWARD RIEDEL and STEVEN ALAN LOBUE's Motions
24 to Sever each case from that of their co-conspirators and have
25 four separate trials.[1]

---

[1] The motion was filed by defendant Mott. Defense counsel for Riedel and Lobue filed motions for joinder. Defense counsel for Lobue indicated that his joinder request was on behalf of plaintiff CHRISTOPHER TRAVIS and provides no supporting

**FACTUAL BACKGROUND**

The indictment in this case names five defendants in eight counts. Count One alleges a conspiracy among all five defendants to commit wire fraud, mail fraud, and criminal infringement of copyright. It alleges that the conspiracy began no later than in approximately 2005 and continued through early October 2008. All five defendants played roles in the conspiracy. Defendants FREYLING and BUTTS established at least three different websites – www.familydvdwholesale.com (Family), www.dvds2gowholesale.com (DVDs 2 Go), and www.movieareus.com (Movies) – to advertise the sale and distribution of thousands of movies in DVD format. The sites generated a total of approximately $30,000 per month in sales.

The defendants used these three websites to solicit thousands of orders for DVDs from customers throughout the United States. The websites were hosted on servers located within the United States and controlled primarily by defendants FREYLING and BUTTS from computers operated at their residences in Turlock, California. The defendants used e-mail accounts with SBC Global to communicate with customers. Payments for the DVDs were made through electronic third-party billing services, and these transactions involved information crossing state lines.

Once an order was placed, all five defendants would process the order by packaging counterfeit copies of copyright-protected movie titles and shipping them by United States mail to customers. The orders were packaged in the garage of the residence of

---

affidavit or declaration.

defendants BUTTS and FREYLING. Defendants BUTTS, MOTT, LOBUE, and RIEDEL prepared the packages and then took them from the residences to the United States Post Office in Denair, California. From there the packages were shipped to customers throughout the United States.

Investigators conducted surveillance and also uncovered a very large quantity of evidence when seizure and search warrants were executed on October 8, 2008. Some of the overt acts in furtherance of the conspiracy are listed in the indictment and include the following:

* On or about April 5, 2008, defendant BUTTS sent an e-mail message to an undercover investigator with the MPAA in response to questions about the DVDs being sold through the Family website. The message stated that "we sell in bulk to over 27,000 customers monthly we sell to the public at below wholesale no taxes and very low shipping. still able to make a handsome profit. kind regards steven ceo."

* On or about May 21, 2008, defendant LOBUE took several packages of counterfeit DVDs to the Denair Post Office for shipment. He also declined to accept several other packages which had been returned to a Post Office box under the control of defendants BUTTS and FREYLING because the customer had complained that the items were "not originals."

* Between July 2007 and May 2008, defendants FREYLING and BUTTS maintained a joint checking account for "Butts DVD Wholesale" during which approximately 184 deposits in excess of $272,000 and 317 withdrawals in excess of $272,000 were made.

* On or about December 24, 2007, defendant FREYLING gave defendant BUTTS a letter expressing her appreciation for the work of defendant BUTTS and his co-workers and stated that the Christmas bonus for defendant BUTTS was four tickets, flights, and hotel accommodations for the National Football League's NFC Championship game on January 20, 2008.

* On or about July 21, 2008, in their "last wil (sic) and testament dated 6/10/08 in the State of California Stanislaus County" defendants FREYLING and BUTTS stated "our businesses Family DVD Wholesale and DVDs 2 Go

3

Wholesale, we have appointed Steven Alan Lobue, at our request to maintain and operate both businesses . . . [defendant LOBUE] is to appoint an attorney to disperse (sic) checks once a month to . . . our employee Raymond Mott's!!"

* On or about August 27, 2008, defendant FREYLING spoke with defendants BUTTS, MOTT, and LOBUE as they fulfilled orders processed through the Family, DVDs 2 Go, and Movies websites at the residence of defendants FREYLING and BUTTS.

* On or about September 2, 2008, defendants LOBUE and MOTT transported approximately 208 packages (each with a return address referencing one of the three websites and/or a Post Office box under control of defendants FREYLING and BUTTS) from the residence of defendants FREYLING and BUTTS, in a vehicle belonging to defendants FREYLING and BUTTS, to the Post Office in Denair, California.

* On or about September 22, 2008, defendants RIEDEL and LOBUE transported approximately 202 packages (each with a return address referencing one of the three websites and/or a Post Office box under control of defendants FREYLING and BUTTS) from the residence of defendants FREYLING and BUTTS to the Post Office in Denair, California.

* On or about September 29, 2008, defendants RIEDEL and LOBUE transported approximately 215 packages (each with a return address referencing one of the three websites and/or a Post Office box under control of defendants FREYLING and BUTTS) from the residence of defendants FREYLING and BUTTS, in a vehicle belonging to defendants FREYLING and BUTTS, to the Post Office in Denair, California.

* On or about October 8, 2008, the defendants processed orders from the Family, DVDs 2 Go, and Movies websites, and prepared a stack of approximately 75 copies of the DVD "Kung Fu Panda" with a handwritten note that read "Pre-order Don't Touch." This title was listed on the Family website and had not been released for DVD distribution and was not scheduled for release until November 18, 2008.

The indictment also charges all five defendants with one count of wire fraud based on a scheme to defraud beginning in 2005 and continuing through at least September 8, 2008. The scheme to defraud revolved around the operation of the three websites

4

mentioned in the conspiracy charge in the indictment and selling copyright-protected movies as genuine items.

The indictment also charges all five defendants with one count of mail fraud based on a scheme to defraud beginning in 2005 and continuing through approximately October 8, 2008. This scheme to defraud also revolved around the operation of the three websites mentioned in the conspiracy charge in the indictment and selling copyright-protected movies as "new," "not copied, burned, or used."

The indictment also charges all five defendants with criminal infringement of copyright. This count alleges that all five defendants during a 180-day period from a time in 2005 through October 2008, willfully infringed the copyrights of protected works, for purposes of commercial advantage and private financial gain, by reproducing and distributing ten or more copies of one or more copyright-protected works having a retail value of $2500.00 or more.

The indictment also charges defendants FREYLING, BUTTS, and LOBUE with smuggling goods into the United States from the Philippines and elsewhere in violation of copyright and customs laws in the United States. This conduct took place from 2005 through October 2008. In addition, these three defendants are charged with criminal trademark violations during the same period.

Defendants BUTTS and FREYLING are also charged with one count of theft of government money, because from a time in approximately 1991 through October 2008, the couple received in excess of $130,000 in Supplemental Security Income benefits while failing to disclose that they resided together, controlled joint bank

5

accounts, and operated one or more businesses together that generated substantial amounts of income. FREYLING is charged in one count with making false statements to the Federal Bureau of Investigation, because when she was interviewed about her involvement in the conspiracy, she denied any involvement.

**ARGUMENT**

**I. The Defendants Are Properly Joined in the Indictment.**

Joinder of charges against multiple defendants is controlled by Rule 8(b) of the Federal Rules of Criminal Procedure. <u>United States v. Sanchez-Lopez</u>, 879 F.2d 541, 550 (9th Cir. 1989). Rule 8(b) sets forth the standard governing the joinder of defendants:

> Two or more defendants may be charged in the same indictment or information if they are <u>alleged to have participated in the same act or transaction</u> or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and <u>all of the defendants need not be charged in each count</u>. (Emphasis added.)

The goal of Rule 8(b) is to maximize trial convenience and efficiency with a minimum of prejudice. <u>United States v. Sanchez-Lopez</u>, 879 F.2d at 550. Rule 8(b) is to be construed liberally in favor of initial joinder. <u>Id</u>. at 551. Joint trials are the rule rather than the exception because of the substantial public interest in efficient use of judicial resources which is embodied in Rule 8(b). <u>United States v. Rogers</u>, 722 F.2d 557, 561 (9th Cir. 1983).

In this case, the defendants participated in the same charged

conspiracy.  The conspiracy involved five defendants and extended for several years.  The majority of the evidence that the government anticipates using at the trial was accumulated during the execution of seizure and search warrants in October 2008 when all five defendants were participating in the conspiracy. Further, surveillance was conducted which will be used to establish the participation of each of the five defendants.  In addition, as noted above, defendants FREYLING and BUTTS prepared a will and estate plan which referenced their desire to have co-defendant LOBUE take over the ongoing illegal business and make monthly payments to co-defendant MOTT, an employee of the business. Co-defendants FREYLING and LOBUE are siblings.

Having to present this evidence in four separate trials would be an undue burden on the government and the court, and no defendant has shown any potential prejudice that would outweigh the efficiencies obtained by a single trial.

**II. The Joinder in This Case is Not Prejudicial and Does Not Warrant Severance Under Rule 14.**

**A.  General Principles**

Generally, "defendants jointly charged are to be jointly tried." United States v. Ramirez, 710 F.2d 535, 545 (9th Cir. 1983).  The substantial public interest in joint trials is that a joint trial expedites "the administration of justice, reduces congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once." Parker

v. United States, 404 F.2d 1193, 1196 (9th Cir. 1968).

Rule 14 provides that the court may grant a severance if the defendant is prejudiced by a joinder of offenses, of defendants, or by joinder for trial together. To show enough prejudice to require severance, a defendant must establish "substantial prejudice," United States v. Werner, 620 F.2d 922, 928 (2d Cir. 1980); "undue prejudice," United States v. McDonald, 576 F.2d at 1355; and must bear a "heavy burden" of showing prejudice, United States v. Adams, 581 F.2d 193, 198 (9th Cir. 1978). The decision to sever is addressed to the sound discretion of the district court. United States v. Ramirez, 710 F.2d 535, 545 (9th Cir. 1983). The trial court will not be reversed on appeal absent a showing of abuse of discretion. United States v. Lane, 106 S.Ct. 725, 732 n.12 (1986).

In Buchanan v. Kentucky, 483 U.S. 402, 417-20 (1987), the Court held that a non-capital co-defendant's request for severance in a joint murder trial with a capital defendant was foreclosed by its analysis in Lockhart v. McCree, 476 U.S. 162, 180-82 (1986). The Court in Buchanan explained that the state's legitimate interest in having a single jury decide all the issues in a joint capital trial promoted the reliability and consistency of the judicial process, and was more compelling than the defendant's concern about the "possible effect" upon him. Id. (citing Lockhart v. McCree, 476 U.S. at 179-80, 181, 182-83, 184).

The Court in Buchanan v. Kentucky reasoned:
> In joint trials, the jury obtains a more complete view of all the facts underlying the charges than would be possible in separate trials. From such a perspective, it may be able to arrive more reliably at its conclusions regarding the guilt or innocence of a

8

> particular defendant and to assign fairly the
> responsibilities of each defendant in the sentencing.
> See ABA Standards for Criminal Justice, Standard 13-2.2
> (2d ed. 1980). This jury perspective is particularly
> significant where, as here, all the crimes charged
> against the joined defendants arise out of one chain of
> events, where there is a single victim, and where, in
> fact, the defendants are indicted on several of the same
> counts. 483 U.S. at 418.

The Court has emphasized the concern that the government should not unnecessarily be put to the burden of presenting the same evidence and testimony twice either in the same trial (McCree, 476 U.S. at 181) or in separate trials (Buchanan, 483 U.S. at 418-19). See Zafiro v. United States, 113 S.Ct. 933 (1993) (and authorities cited therein) (antagonistic or "mutually exclusive" defenses do not require severance as a matter of law; joint trials play a vital role in the criminal justice system by promoting efficiency and serving the ends of justice). See also United States v. Villarreal, 963 F.2d 725, 731-32 (5th Cir.) (and authorities cited therein) (rejecting severance argument of one of two capital co-defendants in prosecution under § 848(e)), cert. denied, 113 S.Ct. 353 (1992). In this case, having a separate trial for defendants BUTTS and FREYLING and then three other separate trials for defendants MOTT, RIEDEL, and LOBUE would require the same evidence to be put on four times by the government and would unnecessarily consume the time and resources of the government, the witnesses, and the court.

A defendant is not entitled to severance merely because the prosecution's proof is stronger against a co-defendant. United States v. Williams, 604 F.2d 1102, 1119 (8th Cir. 1979); United States v. Anderson, 626 F.2d 1358, 1373 (8th Cir. 1980); United

States v. Dansker, 537 F.2d 40 (3d. Cir. 1976). Also, a showing that a defendant would have a better chance of acquittal if tried separately is not sufficient to force a severance. United States v. Berkowitz, 662 F.2d 1127, 1134 (9th Cir. 1981). A severance will not be granted on this ground except in rare circumstances. See United States v. Patterson, 819 F.2d 1495 (9th Cir. 1987); United States v. Monk, 774 F.2d 945 (9th Cir. 1985). The mere fact that a criminal defendant is jointly tried with a more culpable co-defendant is insufficient to constitute an abuse of the district court's discretion. United States v. Van Cauwenberghe, 827 F.2d 424, 432 (9th Cir. 1987), cert. denied 484 U.S. 1042 (1988). Also, a defendant is not entitled to severance because a co-defendant has a criminal record. United States v. Dalzotto, 603 f.2d 642, 646 (7th Cir. 1979); United States v. Rucker, 586 F.2d at 903; United States v. Bazinet, 462 F.2d 982, 992 (8th Cir. 1972). That evidence may be admissible against one defendant but not the other also does not in and of itself require severance. United States v. Reeves, 674 F.2d 739, 746 (8th Cir. 1982); United States v. Lyles, 593 F.2d 182, 190 (2d Cir. 1979); United States v. Hoffa, 349 F.2d 20, 43 (6th Cir. 1965), affirmed, 385 U.S. 293 (1965). Where the same evidence is admissible against all defendants, severance will not be granted. United States v. Ciampaglia, 628 F.2d 632, 643 (1st Cir. 1980); United States v. Boyd, 610 F.2d 521, 525 (8th Cir. 1979); United States v. McPartlin, 595 F.2d 1321, 1333 (7th Cir. 1979); United States v. Arroyo-Angulo, 580 F.2d 1137, 1144 (2d Cir. 1978); United States v. Dye, 508 F.2d 1226, 1236 (6th Cir. 1974); United States v. Shuford, 454 F.2d 772, 775-76 (4th Cir. 1971).

Ultimately, the primary concern is whether "the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants, in view of its volume and the limited admissibility of some of the evidence." United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir. 1980), cert. denied, 449 U.S. 856 (1980).

In this case, the defendants were participants in the same alleged conspiracy, and the jury should have no difficulty in following the court's instructions and compartmentalizing the evidence against each defendant. In short, the three moving defendants have failed to demonstrate that "joinder [is] so manifestly prejudicial that it outweigh[s] the dominant concern of judicial economy." United States v. Monks, 774 F.2d 945, 948 (9th Cir. 1985). All five defendants are named in four of the eight counts. Four defendants are named in two additional counts. The majority of the government's evidence relates to the overall conspiracy to commit wire fraud, mail fraud, and criminal infringement of copyright. In only one count are two defendants named, and in one count defendant FREYLING is named by herself (because she lied to investigators when they questioned her about her involvement in the conspiracy). There is no reason to believe that with proper instructions a jury will not be able to compartmentalize the evidence and make determinations of guilt or innocence for each defendant separately.

**B.  Bruton.**

The Supreme Court has held that a defendant is deprived of his Sixth Amendment right of confrontation when the facially and

11

"powerfully incriminating" confession of a non-testifying co-defendant which "expressly implicates" the defendant is introduced at their joint trial. Bruton v. United States, 319 U.S. 123, 88 S.Ct. 1620 (1968); Richardson v. Marsh, 481 U.S. 200, 208 (1987).

In this case, the requirements of Bruton can be met by redacting or deleting references to a complaining defendant, if any statements by a non-testifying co-defendant following arrest are used by the government in its case in chief. United States v. Gonzales, 749 F.2d 1329, 1334 (9th Cir. 1984); United States v. Brooklier, 685 F.2d 1208, 1218 (9th Cir. 1982), cert. denied, 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed. 2d 439 (1983); United States v. Hernandez, 608 F.2d 741, 749 (9th Cir. 1979). At present, there is no Bruton problem identified by any of the moving defendants.

Should investigation reveal there were statements made by the co-defendants in furtherance of the conspiracy, they may be offered at trial under the co-conspirator exception of the hearsay rule. Statements properly admitted under the co-conspirator exception of the hearsay rule do not violate a defendant's Sixth Amendment rights to confrontation. United States v. McCown, 711 F.2d 1441, 1449 (9th Cir. 1983). Each defendant's rights under the Confrontation Clause are not affected by the admission of these statements. See Bourjailly v. United States, 483 U.S. 171, 181 (1987).

**C. Antagonistic Defense.**

Severance is also not required because defenses may be mutually antagonistic. As the Ninth Circuit held in United States

v. Polizzi, 801 F.2d 1553, 1554 (9th Cir. 1986), "[t]o justify a severance on the ground of antagonistic defenses, there must be a showing of `mutual exclusivity' -- Polizzi's acquittal had to preclude Matrange's acquittal" (citing cases). See also United States v. Sherlock, 865 F.2d 1069 (9th Cir. 1989). Severance will not be granted on such a basis unless the defenses are antagonistic to the point of being irreconcilable and mutually exclusive. The court stated:

> The mere presence of hostility among defendants or the desire of one to exculpate himself by inculpating the other does not generate the kind of prejudice that mandates severance.

Id. at 1081.

No defendant has made any required showing. Therefore, each defendant's trial should not be severed from that of his co-defendants. See, e.g., United States v. Throckmorton, 87 F.3d 1069 (9th Cir. 1996).

**D. Spill-over.**

Co-conspirators are vicariously liable for all of the acts of another conspirator even though he or she may not have directly participated in those acts, so long as those acts are committed in furtherance of the conspiracy. United States v. Saavedra, 684 F.2d 1293 (9th Cir. 1982). Each defendant's position in this particular case is not unlike that of any co-conspirator who is charged in a joint indictment. Almost all co-conspirators have different levels of responsibility and the evidence against each is different and of varying strengths. No moving defendant has made a showing in his motion that his position is in any way

13

unique so as to demonstrate undue prejudice and the necessity of a separate trial.

A defendant seeking severance based on "spill-over" effect of evidence admitted against a co-defendant must also demonstrate the insufficiency of limiting instructions. <u>United States v. Joetzki</u>, 952 F.2d 1090 (9th Cir. 1991). The defendants in this case are charged with conspiracy to commit wire fraud, mail fraud, and to infringe copyrights. The various issues involved are simple enough that a jury will be able to compartmentalize any limited items of incoming evidence (for a charge not common to all defendants) admitted only against a co-defendant under proper limiting instructions. The defendants have made no showing that such limiting instructions would be insufficient.

**E. Potential Exonerating Evidence From Co-conspirators.**

A court may grant a motion for severance if it appears that a co-defendant will give exculpatory testimony that could not be compelled if the witness was also a defendant at the same trial. The defendant must demonstrate that he would call the co-defendant, that the co-defendant would in fact testify, and that the testimony would be favorable. <u>See</u> <u>United States v. Little</u>, 753 F.2d 1420, 1446 (9th Cir. 1984). The court also considers the possible weight and credibility of the testimony, the degree to which it is exculpatory, and the economy of severance at the point the motion was made. <u>Id</u>.

Although the showing that testimony would be favorable to the defendant is necessary, it is not a sufficient condition for severance. <u>United States v. Mariscal</u>, 939 F.2d 884, 886 (9th Cir.

1991). The district court should give special consideration to the exculpatory effect of the desired testimony and the degree to which the testimony is exculpatory.  The defendant must show that this testimony is "substantially exculpatory" in order to prevail.  Id.  A severance motion was properly denied where "the testimony would not amount to a dramatic and convincing exculpation of the co-defendants".  Id. citing United States v. Abraham, 541 F.2d 1234, 1240 (7th Cir. 1976), (per curiam) cert. denied, 429 U.S. 1102 (1977).  A severance motion was also properly denied where the proposed testimony merely contradicted portions of the government's proof.  Mariscal, 939 F.2d at 886.

No moving defendant has made the requisite showing that a co-defendant will be called and will testify to what would amount to a 'dramatic and convincing exculpation' of any other co-defendant.

**CONCLUSION**

Based on the foregoing, the defendants' motions for severance should be denied.

Respectfully submitted,

LAWRENCE G. BROWN
Acting United States Attorney

Dated: May 11, 2009          By:   /s/ David L. Gappa
                                   DAVID L. GAPPA
                                   Assistant U.S. Attorney